July 29, 2026

FILED BY _____ D.C.

JUL 3 1 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Judge Patrick M. Hunt
U.S. Federal Building and Courthouse
299 East Broward Boulevard
Room 310A
Fort Lauderdale, Florida 33301

U.S. District Court Clerk's Office for the Southern District of Florida
Wilkie D. Ferguson, Jr. U.S. Courthouse,
400 North Miami Avenue, Miami, FL 33128

**VIA UPS**

**Re: Case Number: 1:26-cv-23517-YH**

**PLAINTIFF'S LETTER MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO COMPEL AN ADEQUATE SEARCH, A VAUGHN INDEX, AND IN CAMERA REVIEW**

Dear Judge Hunt:

Plaintiff respectfully submits this letter in response to Defendant's Answer of June 25, 2026 (the "Answer") and respectfully requests that the Court grant summary judgment in Plaintiff's favor or, alternatively, compel Defendant to conduct a complete and adequate search, produce a Vaughn Index identifying all withheld records, and submit the withheld records to the Court for in camera review.

Pursuant to Federal Rule of Civil Procedure 56(a) and 5 U.S.C. § 552(a)(4)(B), Plaintiff respectfully moves for summary judgment or, in the alternative, for an order requiring Defendant to satisfy its statutory burden by conducting and documenting an adequate search, producing a Vaughn Index, and submitting withheld records for in camera review.[1]

Defendant's Answer consists almost entirely of general denials and boilerplate affirmative defenses. It asserts that Defendant conducted an adequate search and that responsive records are exempt from disclosure because of ongoing investigations and applicable FOIA exemptions. However, the Answer provides no factual explanation describing what search was actually conducted, who conducted it, what repositories were searched, which custodians were

---

[1] Summary judgment is the typical vehicle for resolving FOIA cases where the agency demonstrates the adequacy of its search and the applicability of exemptions through sufficiently detailed affidavits. *Miscavige v. IRS*, 2 F.3d 366, 367–68 (11th Cir. 1993). The agency bears the burden of justifying its withholdings and demonstrating that any segregable non-exempt material has been released. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1248 (11th Cir. 2008)

contacted, whether attorney files or handwritten notes were searched, whether FBI repositories were searched, or how the search was reasonably calculated to locate all responsive records.

FOIA does not require the public—or this Court—to accept an agency's assurances on faith. It requires the agency to demonstrate, through an adequate search and properly supported exemption claims, that it has fulfilled its statutory obligations. Plaintiff respectfully asks only that Defendant be held to those mandatory statutory requirements.

Moreover, Defendant has not submitted any declaration or affidavit from the individual or individuals who actually conducted the search for responsive records. In FOIA litigation, agencies ordinarily establish the adequacy of their search through reasonably detailed declarations describing the search methodology, the locations searched, the custodians consulted,[2] the search terms employed, and the basis for concluding that the search was reasonably calculated to uncover all responsive records. Here, the Court has before it only Defendant's conclusory assertion that an adequate search occurred. Without competent evidence describing the search itself, neither Plaintiff nor the Court can meaningfully assess whether Defendant satisfied its obligations under FOIA. Particularly where Plaintiff identified specific categories of records and specific repositories likely to contain responsive materials—including FBI interview records, attorney-generated materials, witness preparation notes, communications among prosecutors and agents, and records maintained by multiple DOJ components—a generalized assertion that an adequate search occurred is insufficient to permit meaningful judicial review.

Indeed, Defendant's own Answer appears to acknowledge that EOUSA is not the custodian of FBI records and denies that it is the proper recipient for requests directed to records maintained by the FBI. Yet Plaintiff's FOIA request specifically identified FBI-generated records, FBI interview memoranda, FD-302s, and other investigative records as likely locations of responsive materials. The present record contains no indication that such repositories were searched or that the search reasonably followed the obvious leads identified in Plaintiff's request. If records are reasonably likely to exist within another DOJ component identified in the request, FOIA requires a search reasonably calculated to locate them.

Defendant likewise relies upon a generalized assertion that responsive records are protected because of "ongoing investigations" and applicable FOIA exemptions. At this stage, however, that assertion is entirely conclusory. Defendant has not identified what investigation allegedly remains pending, how disclosure of the requested records could reasonably be expected to interfere with such proceedings, whether every category of requested records is subject to the same claimed harm, or why reasonably segregable portions could not be released. FOIA does not authorize blanket withholding based upon generalized references to ongoing investigations. Rather, the agency bears the burden of demonstrating that each claimed exemption applies to the records at issue and that all reasonably segregable non-exempt information has been disclosed.

That burden is particularly significant here. Plaintiff's criminal proceedings concluded years ago. The records sought primarily concern historical witness interviews, witness "preparation sessions," communications, and investigative follow-up relating to events that likewise occurred years ago. While Plaintiff recognizes that aspects of the broader OneCoin

---

[2] Plaintiff's FOIA Request clearly sets forth all parties that could potentially be custodians of records sought.

investigation may continue with respect to other individuals, the mere existence of continuing investigative activity cannot, without more, justify the categorical withholding of every responsive record relating to Plaintiff's completed criminal prosecution and the Government's investigation of its sole cooperating witness, Konstantin Ignatov ("Igantov"), whose testimony forms the central subject of Plaintiff's request. If Defendant contends otherwise, it should be required to substantiate that claim through a Vaughn Index and, where appropriate, by submitting the withheld records for in camera review so that the Court may independently evaluate the applicability of the asserted exemptions.

Plaintiff is not attempting to relitigate his criminal case. Rather, he seeks agency records that bear upon how the Government evaluated, documented, and responded to information concerning the credibility of its principal cooperating witness. FOIA exists precisely so that courts and the public need not rely solely upon an agency's assurances but may instead evaluate the agency's actions through meaningful judicial review.

The need for such review is heightened by the factual history surrounding the requested records. The Government's sole cooperating witness, Ignatov, later admitted that he committed perjury concerning his testimony about the destruction of his laptop that contained material information about OneCoin's finances and operations. The Government subsequently acknowledged that this testimony was perjured, yet Ignatov remained uncharged for that admitted perjury. Despite that acknowledged false testimony, the Government continued to maintain in post-trial proceedings that Ignatov's testimony concerning the alleged July 20, 2016 meeting between Plaintiff and Irina Dilkinska was truthful or, alternatively, that he may simply have been mistaken, notwithstanding information later obtained through official channels from Indian authorities indicating that Ms. Dilkinska was in India during the relevant period and therefore could not have attended the alleged meeting in Bulgaria on July 20, 2016.

Whether the Government ultimately reached the correct conclusion is not the issue before this Court. Rather, the relevant question is whether responsive records exist documenting how that conclusion was reached. If prosecutors and investigators evaluated the information received from India, compared it with other evidence, discussed the discrepancies internally, or re-interviewed their cooperating witness records reflecting those efforts would be directly responsive to Plaintiff's FOIA request. To date, no such records have been identified or produced, nor has Defendant explained whether they were searched for.

Ignatov testified under oath that he met with prosecutors and agents on approximately *twenty* occasions before trial. Although often characterized as "preparation sessions," those meetings involved far more than rehearsal. He testified that prosecutors repeatedly showed him evidence he had not previously seen, presented new discovery, and questioned him regarding substantive factual matters, including the alleged July 20 meeting. Sessions of that nature would reasonably be expected to generate notes, memoranda, emails, interview summaries, or other records responsive to Plaintiff's request. To the extent those materials memorialize factual information, rather than purely attorney mental impressions, they also raise questions concerning segregability under FOIA.

Plaintiff's request is not directed toward attorney strategy or mental impressions. Rather, it seeks records reflecting factual interactions between Government attorneys, investigators, and their cooperating witness during sessions in which new evidence was presented and substantive factual questions were asked and answered. To the extent such records memorialize factual

statements made by the witness, responses to newly presented evidence, or subsequent investigative follow-up, those records fall squarely within the categories identified in Plaintiff's FOIA request. If Defendant contends that no such records exist, despite the witness's testimony describing approximately twenty substantive sessions, Defendant should be required to make that representation under oath after describing a search reasonably calculated to locate such records.

Plaintiff is not asking the Court to assume that records from these approximately *twenty* substantive sessions necessarily exist or that they contain non-exempt information. Rather, Plaintiff seeks clarity regarding whether such records were ever created, whether they were searched for, and whether they are being withheld. Given the witness's sworn testimony that prosecutors repeatedly presented him with *new* evidence, portions of discovery he had not previously seen, and questioned him extensively regarding substantive factual matters, it would not be unreasonable to expect that at least some contemporaneous notes, memoranda, emails, interview summaries, or other memorializations may have been generated. If Defendant indeed maintains that no such records exist, Plaintiff respectfully requests that Defendant be required to state so expressly through a sworn declaration identifying the custodians searched, the repositories examined, and the factual basis for that representation. If such records do exist, Plaintiff respectfully requests that they be identified in a Vaughn Index and submitted to the Court for in camera review to determine whether they contain reasonably segregable factual material subject to disclosure under FOIA.

This request is particularly appropriate because the approximately *twenty* sessions included questioning concerning the alleged July 20, 2016 meeting, which later became the subject of significant post-trial litigation after information obtained through official channels from Indian authorities materially conflicted with the witness's account. The Government ultimately maintained that its cooperating witness either testified truthfully or may simply have been mistaken. Plaintiff does not ask this Court to evaluate the correctness of that conclusion. Rather, Plaintiff respectfully requests disclosure, or at least judicial review, of the records that would reasonably be expected to document how that conclusion was reached. If the Government questioned the witness further, compared his account with the information received from India, or otherwise evaluated the discrepancies, records reflecting those efforts would appear directly responsive to Plaintiff's FOIA request.

The chronology of the underlying criminal proceedings likewise illustrates why meaningful judicial review is appropriate. During trial, Plaintiff, while Ignatov was still on the witness stand, submitted targeted Brady requests, both orally and in writing, seeking information concerning the alleged July 20 meeting and was advised that no additional pertinent information existed. Plaintiff no longer accepts unsupported agency assurances where FOIA requires the agency to demonstrate the adequacy of its search through competent evidence. For example, following trial, additional financial records were produced by the Government only after targeted defense requests in April 2020. Plaintiff references these events not to relitigate the criminal proceedings or to ask this Court to determine whether any constitutional disclosure obligations were satisfied. Rather, this chronology demonstrates that relevant information was not always disclosed proactively and underscores why FOIA serves an important public function: permitting courts to verify that agencies have conducted complete searches and properly asserted exemptions rather than requiring requesters simply to accept agency assurances.

*Defendant cannot rely upon its internal evaluation of its cooperating witness to defend the accuracy of his testimony while simultaneously declining to identify whether records documenting that evaluation exist. FOIA exists precisely so that such agency assurances may be tested through meaningful judicial review rather than accepted at face value.*

Plaintiff does not ask the Court to infer that additional responsive records necessarily exist or that any particular record is non-exempt. Rather, Plaintiff respectfully requests that the Court require Defendant to demonstrate, through competent declarations and, where appropriate, in camera review, that it conducted the complete search required by FOIA and that any withheld records have been properly withheld under the statute. Given the record presently before the Court, such judicial oversight is consistent with FOIA's central purpose of ensuring transparency and public confidence in the integrity of governmental decision-making.

Accordingly, Plaintiff respectfully requests that the Court:

1. Grant summary judgment in Plaintiff's favor on the issue of the adequacy of Defendant's search or, alternatively, deny Defendant the benefit of its unsupported assertions until it has satisfied its evidentiary burden under FOIA;

2. Order Defendant to conduct and document a search reasonably calculated to uncover all responsive records, including records maintained by EOUSA, the United States Attorney's Office for the Southern District of New York, the FBI, and any other DOJ component reasonably likely to possess responsive materials;

3. Require Defendant to submit detailed declarations describing the search methodology employed, the repositories searched, the custodians consulted, and the basis for concluding that no additional responsive records exist;

4. Order Defendant to produce a Vaughn Index identifying each withheld record or category of records, including any notes, memoranda, emails, text messages, interview summaries, attorney notes, witness-preparation materials, FD-302s, or other memorializations generated during or relating to the approximately twenty substantive sessions between prosecutors, agents, and cooperating witness Ignatov, together with the specific basis for each claimed exemption. In particular relating to:

   (a) the approximately twenty substantive sessions between prosecutors, agents, and cooperating witness Konstantin Ignatov;

   (b) the Government's investigation and evaluation of Ignatov's admitted false testimony concerning the destruction of his laptop;

   (c) the Government's evaluation of Ignatov's testimony concerning the alleged July 20, 2016 meeting following receipt of information from Indian authorities; and

   (d) any communications or records reflecting the Government's assessment of whether Ignatov's testimony regarding that meeting was accurate, mistaken, or otherwise required further inquiry.

5. If Defendant contends that no additional responsive information existed in any of these categories, Plaintiff respectfully requests that the Court require Defendant to submit sworn declarations specifically addressing each category, identifying the custodians and repositories searched, the search methodology employed, and the basis for concluding that no responsive records exist; and

6.   Grant such other and further relief as the Court deems just and proper.

Plaintiff respectfully submits that FOIA was enacted to ensure meaningful public oversight of governmental decision-making while protecting legitimately exempt information through carefully defined statutory exemptions and judicial review. Plaintiff asks only that Defendant be required to satisfy those statutory obligations by demonstrating, through competent declarations, an adequate search; by identifying responsive records through a Vaughn Index; and, where appropriate, by submitting withheld materials to the Court for in camera review. Such relief would neither prejudice any legitimate governmental interest nor require disclosure of exempt material. It would simply ensure that FOIA functions as Congress intended.

Plaintiff further respectfully requests that the Court consider allowing reasonable extensions of any response or briefing deadlines, if necessary, during the pendency of this action. Plaintiff is currently incarcerated at the Federal Correctional Institution Miami Satellite Prison Camp and is proceeding pro se. His ability to access legal materials, prepare filings, communicate by mail, and meet litigation deadlines is necessarily more limited than that of a represented litigant. Plaintiff will make every effort to comply with all deadlines imposed by the Court but respectfully requests reasonable accommodations, where appropriate, to ensure that his incarceration does not unduly prejudice his ability to prosecute this FOIA action.


Respectfully submitted by:


Mark S. Scott. J. D.
Pro Se Plaintiff

600 Coral Way, 12
Coral Gables, Florida 33134
e. msslitdeline@gmail.com
c. (305) 587-4030





**FedEx** ®

**This envelope is only for FedEx Express® shipments.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

Check your FedEx shipping document, the current FedEx Service Guide, or the conditions of carriage for complete terms, conditions, and limits of liability.

© 2025 FedEx 155475/155476 REV 2/25

PAP 21

Please recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability**. Recycling options may vary by location.



**Scan to learn how we can help make Earth a priority together.**

Insert shipping document here.