**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MARK STANLEY SCOTT,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,**<br><br>***Defendant.*** | **Civil Action No. 1:26-cv-23517-YH** |

**DECLARATION OF NICOLE MOORE-SANCHEZ**

I, Nicole Moore-Sanchez, declare the following under 28 U.S.C. § 1746:

1. I am an Attorney-Advisor in the Freedom of Information Act/Privacy Act ("FOIA/PA") Office, a component office within the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ") designated to administer both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a.. I began my employ with EOUSA in July 2019. Prior to that, from April 2015 to July 2019, I served as an Attorney-Advisor with the Pension Benefit Guaranty Corporation (PBGC), in the Office of General Counsel - first as a Contract Attorney in the Disclosure Division and then as a Privacy Attorney in the Privacy Office. In both positions, I provided disclosure guidance as a direct report to the agency's Chief Privacy Officer, Disclosure Office, and PBGC's various offices. During my tenure there, my team received the Federal Privacy Council's 2018 Award for Excellence. I revised and republished the agency's entire system of records notices and provided guidance for privacy litigation. While in the Disclosure Division, I evaluated, reviewed and analyzed Freedom of Information Act (FOIA) and Privacy Act requests for disclosure decisions, issued Submitters'

Notices in accordance with Executive Order 12,600 and provided advice regarding the potential harm to the government in disclosures of certain business records and contract details, analyzed and responded to subpoenas for governmental witnesses on behalf of the General Counsel, I responded to requesters' FOIA requests in Spanish, and performed special assignments, such as, drafting opinion papers related to the treatment of later discovered records.

2. As an Attorney-Advisor with EOUSA, I maintain an active TS/SCI clearance for my position to review, assess and recommend for non-disclosure/disclosure all TS requests, consults, and referrals coming into this office. for disclosure recommendation and work as a liaison between EOUSA's offices and other DOJ components, providing advice and counsel on responding to requests for access to information located in this and the other 94 districts of the United States Attorneys' Offices ("USAOs"). I am well-versed in both matters that fall within the Civil Division and Criminal Division, and the discovery techniques applicable to each. In addition, as the legal advisor on privacy matters to EOUSA's Senior Component Official for Privacy, I am responsible for reviewing EOUSA's Privacy Act Systems of Records, drafting the notifications for publication associated with those systems, providing opinions on the appropriateness of personally identifiable information collected by EOUSA and the various USAOs, and serving as agency counsel for associated litigation. I review the adequacy of searches conducted in response to requests, assign and review the work conducted by my assigned paralegal, a classified paralegal and one contract paralegal, provide guidance and compliance advice for breaches, and assess disclosure recommendations from the USAOs to ensure disclosures or withholdings of responsive records are made in accordance with FOIA, In total, I have more than a dozen years of FOIA and Privacy Act experience, including an extensive knowledge of privacy and the Privacy Act attained through training sessions provided by the International Association of Privacy Professionals (IAPP) and various government agencies.

3. Due to the nature of my position and primary responsibilities as an Attorney-

Advisor, I am intimately familiar with the procedures followed by the FOIA/PA office, the offices of the EOUSA, and the various United States Attorney's Offices. I am qualified to assess, review and direct the search for records in accordance with the Privacy Act, the Freedom of Information Act, and other applicable laws and policies, as well as opine on and provide disclosure recommendations for any records provided through the consultation or referral process from other agencies or components.

## ADMINISTRATIVE HISTORY

4. On January 15, 2026, Defendant EOUSA opened Freedom of Information Act (FOIA) request on behalf of Plaintiff, identified as EOUSA-2026-001321.[1] The request, dated January 10, 2026, was directed to DOJ's Criminal Division and the Office of Legal Counsel, subject "Freedom of Information Act Request - Records Concerning Perjury and Brady Matters in United States v. Mark Scott No. S10 17 -CR-630 (ER)." The Plaintiff's email provided the following as its scoping statement:

> ***Scope of This Request*** *This request is limited to records that relate to an admitted perjurer, specifically, the awareness by prosecutors and federal agents of - suspected perjury, false testimony, perjury or credibility issues concerning the Government's sole cooperating witness, Konstantin Ignatov, and to Brady-related requests and disclosures made or omitted before, during and after trial insofar as they relate to those issues.*

And sought the following eight (8) categories of records (note that the Plaintiff's request contains three (3) bracketed footnotes providing additional information, the full content of the footnotes are included at the bottom of the enumerated requests) from 14 named individuals and 4 categories of additional unnamed individuals:

> 1) *Any allegations, acknowledgments, analyses, discussions, or assessments that Mr. Ignatov provided false, misleading, inconsistent, or incomplete testimony, including any admitted or suspected perjury.*

[1] On January 14, 2026, EOUSA received a forwarded request from DOJ's Criminal Division containing what is now the basis for the Plaintiff's Complaint. This request was EOUSA-2026-001298. There was no action taken by EOUSA as the request did not comply with EOUSA's minimum requirements to act by commencing a search for potentially responsive records related to the Plaintiff, specifically, it lacked a Certification of Identity (CID). On January 15, 2026, EOUSA received the CID and opened EOUSA-2026-001321.

2) *Any internal or external communications concerning the truthfulness, accuracy, credibility, or reliability of Mr. Ignatov's statements or testimony.*

3) *Any records reflecting concerns, questions, evaluations, or deliberations regarding inconsistencies or changes in Mr. Ignatov's statements over time, including whether such statements were corrected, revised, or addressed.*

4) *Records of meetings, interviews, proffer sessions, or other communications between prosecutors, federal agents, or other government officials and Mr. Ignatov, to the extent such records relate to admitted or suspected perjury, false testimony, or credibility issues, including[1]:*
    - *Notes, memoranda, summaries, or interview reports (including FBI 302s, 3500s or equivalent);*
    - *Calendars, logs, or scheduling records reflecting when such meetings occurred;*
    - *Records reflecting what was discussed and when it was discussed as it bears on the accuracy or truthfulness of Mr. Ignatov's statements;*
    - *Any records related to the prosecutions sudden decision to oppose documents from its own discovery (DX 550 and DX 552) that strongly signaled perjury by Mr. Ignatov after first agreeing to their admission.*

    *The trial record reflects, including through Mr. Ignatov's own testimony, that at least twenty (20) such meetings occurred between Mr. Ignatov and prosecutors and other federal officials since his arrest. Accordingly, records relating to each such meeting or session should be readily available. This should include a log of all meetings with Mr. Ignatov since his arrest by U.S. authorities.*
    *Please provide:*
    - *Information sufficient to identify the aggregate number of meetings or sessions held with Mr. Ignatov; and*
    - *All responsive records available relating to each such meeting or session within the scope of this request.*

5) *Any materials concerning decisions - during and after trial - whether to investigate, disclose, correct, address, or otherwise respond to admitted or suspected perjury or false testimony by Mr. Ignatov.*

6) *Any records relating to Brady, Giglio, Napue, or related disclosure obligations[2] that concern or relate to Mr. Ignatov's testimony, credibility, admitted or suspected perjury, or false statements, including but not limited to:*
    - *Brady requests, letters, motions, emails, or oral requests made by defense counsel before and during trial that relate to Mr. Ignatov;*
    - *Internal DOJ or U.S. Attorney's Office communications or analyses concerning whether information relating to Mr. Ignatov's credibility, false testimony, or perjury was subject to disclosure;*
    - *Records reflecting decisions to disclose, partially disclose, delay, withhold, or decline to disclose such information.*

7) *Any records relating to meetings, interviews, communications, or follow-up actions by prosecutors or federal agents after Mr. Ignatov admitted to perjury concerning the destruction of a laptop and the prosecution was made aware ,*

*including:*

- *Records of any meetings or communications with Mr. Ignatov following that admission;*
- *Notes, memoranda, interview reports, or internal communications reflecting whether prosecutors or agents investigated, questioned, or otherwise followed up on that admitted perjury;*
- *Any analyses, discussions, or assessments regarding whether that admission raised concerns of additional or further perjury, false statements, or credibility issues;*
- *Any decisions, deliberations, or communications reflecting whether additional investigative steps were taken or declined in light of that admitted perjury.*

8) *Any records relating to meetings, interviews, communications, or follow-up actions by prosecutors or federal agents after the prosecutors were made aware by defense counsel of discovery (found in the prosecution's own files) - strongly signaling false testimony by Mr. Ignatov concerning a fictitious meeting between Irina Dilkinska[3] and the requester - midtrial, again in posttrial motions, and again after Mr. Ignatov admitted to perjury concerning the destruction of a laptop, including:*

- *Records of any meetings or communications with Mr. Ignatov following that admission;*
- *Notes, memoranda, interview reports, or internal communications reflecting whether prosecutors or agents investigated, questioned, or otherwise followed up on that admitted perjury;*
- *Any analyses, discussions, or assessments regarding whether that admission raised concerns of additional or further perjury, false statements, or credibility issues;*
- *Any decisions, deliberations, or communications reflecting whether additional investigative steps were taken or declined in light of that admitted perjury.*

*[1] In the event the prosecution, or any of its agents, interviewed alleged co-conspirator Irina Dilkinska in connection to any investigation into Mr. Ignatov's admitted perjury, suspected perjury or any false - or potentially false – statements made during trial, the documents responsive to this request should include any information learned from her as to the subject matter of this request, and any notes, memoranda, recordings or the like from such interviews. For example, if Irina Dilkinska was ever interviewed and asked about false statements, or suspected false statements made by Mr. Ignatov, any documentation in that regard must be provided. If Irina Dilkinska was ever asked if the requester had knowledge of the OneCoin fraud, information in that regard must be provided as it may further refute Mr. Ignatov's testimony.*

*[2] Specifically, defense counsel made two specific Brady requests targeting exculpatory information in the Government's possession that related to an alleged meeting between Irina Dilkinska and the requester on July 20, 2016 in Sofia, Bulgaria, which was later proven to be fabricated by Mr. Ignatov, and the prosecution later admitted in motion practice to this "inaccuracy" and that there was evidence that it possessed evidence that it should have known of such at the time of trial.*

> *[3] The prosecution, only after being pressed by defense counsel - with further evidence proving perjury - to investigate further, contacted Indian authorities that confirmed that Ms. Dilkinska indeed was in India at the time of the fictitious meeting and only then admitted in that the testimony was indeed "inaccurate."*

(*See EOUSA-1).*

6. The Department of Justice maintains decentralized FOIA operations whereby each office/component maintains its own records. The Criminal Division received the request initially and forwarded it to EOUSA, however, EOUSA does not manage, have insight or control over any other office's FOIA responsibilities nor do we conduct searches for records outside of EOUSA or its 94 USAOs.

7. As such, a search directive, along with the Plaintiff's request was sent to the USAO New York Southern (USAO-NYS) on January 26, 2026, for those items and individuals falling under the purview of EOUSA.

8. On February 20, 2026, USAO-NYS returned their search results and advised that there were ongoing law enforcement activities and litigation related to these records.

9. After review and consultation with the USAO-NYS, on March 23, 2026, EOUSA issued a disclosure determination denying Plaintiff's access request pursuant to FOIA Exemption (b)(7)(A).

10. On March 24, 2026, the Plaintiff submitted an appeal of this determination to the Office of Information Policy (OIP).

11. On June 1, 2026, EOUSA received a copy of the Plaintiff's Complaint from the USAO Florida Southern (USAO-FLS) and assigned LITG-2026-000026) and I was assigned as Agency Counsel to this matter.

**ADEQUACY OF THE SEARCH AND FURTHER REVIEW**

***Adequacy of the Search***

12. On January 26, 2026, EOUSA initiated the USAO-NYS search for all records responsive to Plaintiff's FOIA request through the FOIA case management system. Each USAO maintains the case files for criminal matters prosecuted by their respective office using systems provided by EOUSA. The USAO-NYS's FOIA liaison was directed to commence an electronic search in the USAO-NYS's case management system, in the office's Sharepoint site, and then a manual search by providing search guidance to any remaining Assistant United States Attorneys ("AUSAs") associated with the matter.

13. USAO-NYS delivered to EOUSA four large file sets of potentially responsive records (7.7GB), that include various data types. I personally reviewed these records to determine their responsiveness to the Plaintiff's requests and also discussed them with the responsible AUSAs to fully understand past, pending, and prospective litigation, as well as the underlying investigation.

14. Through review and discussion, the AUSAs confirmed that these files represent all potentially responsive records maintained by the USAO-NYS regarding the matters sought by the Plaintiff, that these records were provided in discovery to the Plaintiff, and that disclosure to the public via a release by EOUSA would irreparably harm matters still open and pending.

15. An agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."[2] The fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."[3]

---

[2] Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting Oglesby v. U.S. Dep't of the Army, 920 f.2d 57, 68 (D.C. Cir 1990)); see e.g., Stalcup v. CIA, 768 F3rd 65, 74 (1st Cir. 2014) (noting that resolution of search claim "turns on whether the agency made a good faith, reasonable effort 'using methods which can be reasonably expected to produce the information requested'" (quoting Oglesby ,920 F.2d at 68)).

[3] Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir 1994) (quoting Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); see Citizens Comm'n on Human Rights, 45 F3rd at 1328 (same); Nation Magazine, 71 F.3d 892 n.7 (explaining that "there is no requirement that any agency [locate] all responsive documents"); Ethyl Corp. v. EPA, 25 F.3d 1241, 1246 (4th Cir. 1994) ("In judging the adequacy of an agency search for documents the relevant

***<u>Further Review of the Records</u>***

16. After another review of the Plaintiff's complaint, I conducted a second review of the records provided, again discussed with the AUSAs at USAO-NYS, confirming the ongoing nature of associated litigation and the potential harm a release via FOIA, which is a release to the public, would do to those matters.

17. As FOIA Exemption (b)(7)(A) is temporal in nature, I conducted a subsequent review of the records and determined that there were applicable Privacy Act exceptions and FOIA exemptions that would fully preclude these records from release, which are discussed in further detail below.

## INITIAL DISCLOSURE DETERMINATION, DISCOVERY, AND OTHER APPLICABLE EXEMPTIONS

18. Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies, such as DOJ, must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.

***<u>Initial Determination – Withheld in full pursuant to FOIA Exemption (b)(7)(A)</u>***

19. The Plaintiff sought investigative records pertaining to a witness who is related to and connected with several open law enforcement matters, including one where the subject is on FBI's Ten Most Wanted List. As such, these records relate to present and pending criminal matters

question is not whether every single potentially responsive document has been unearthed."); In re Wade , 969 F. 2d 241, 249 n.11 (7th Cir. 1992) (declaring that the issue is not whether other documents might exist, but whether the search was adequate); Edelman v. SEC, 239 F. Supp. 3d 45, 51 (D.D. C. 2017) (holding that "the mere fact [plaintiff] has located complaints who assert that they made complaints that do not appear in the SEC's production does not, on its own, cast doubt on the efficacy of the SEC's search."); Vest v. Dep't of the Air Force, 793 F. Supp. 2d 103, 120 (D.D.C. 2011) (finding that "the FOIA does not mandate a 'perfect' search, only an 'adequate' one"); Sephton v. FBI, 365, F. Supp. 2d 91, 101 (D. Mass. 2005) (explaining that FOIA does not require review of "every single file that might conceivably contain responsive information"), aff'd, 442 F. 3d 27 (1st Cir. 2006).

within DOJ's mission to investigate, and the USAO's mission to prosecute. Accordingly, the records that Plaintiff requested meet the threshold requirement of FOIA Exemption (b)(7), specifically, (b)(7)(A).

20. FOIA Exemption 7(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

21. In addition to satisfying Exemption (b)(7)'s threshold, an agency must establish that (a) there is a pending or prospective law enforcement proceeding and (b) disclosure of responsive records could reasonably be expected to adversely affect it.

22. The law enforcement proceedings relevant to these records are active, pending, and ongoing and criminal enforcement proceedings are more than reasonably anticipated against several individuals, including the individual currently on the FBI's Ten Most Wanted List. Further, these trials have not been concluded, and our investigations and prosecutions are not closed.

23. Pursuant to NLRB v. Robbins Tire & Rubber, EOUSA has grouped these similar records together in a single category, the witness statements requested by the Plaintiff. See, NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978). These records consist of interviews, statements, and related records pertaining to K. Ignatov.

24. I discussed this matter with the USAO-NYS and determined that the records are still pertinent to existing and pending matters, including, but not limited to: *US v. Ruja Ignatova et al.*, 17 Cr. 630 (ER), *US v. Gilbert Armenta*, 17 Cr. 556 (ER), *US v. Hargreaves*, 18 Cr. 746 (KPF), *US v. Hamilton and McDonald*, 18 Cr. 793 (ER).

25. There would be definitive interference in pending and future criminal prosecutions. The harm is that the premature disclosure of these records to the public would reasonably be expected to interfere with pending proceedings by exposing which statements cannot be relied upon, and which the government rejected permitting those individuals still subject to criminal

investigation and prosecution to adjust narratives or fabricate counterevidence to match those known findings and statements. Further, EOUSA's application of (b)(7)(A) as a categorical exemption made the creation of a Vaughn Index inappropriate by harming the very investigations and prosecutions the Exemption was used to protect. By describing the documents contained in the four files in a Vaughn, the details would reveal significant details of the ongoing investigations and prosecutions thereby defeating the entire purpose of the (b)(7)(A) exemption relied upon by EOUSA.

***FOIA is not Discovery***

26. The Plaintiff is now a FOIA requester and as a FOIA requester, is not entitled to copies of records previously released to him through discovery when he was a defendant. With NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 144, 95 S.Ct. 1504, 44 L.Ed.2d 29 n.10 (1975) as the baseline for my review and determination, our obligations under the FOIA and the FOIA request submitted by the Plaintiff existed separately and distinct from any obligation that the USAO-NYS had under discovery. There is a distinction between the records available to the public via the FOIA vehicle versus what records may be obtained by a party through discovery. Information disclosed during discovery is limited to the parties, whereas FOIA is disclosure to the public.

27. As a FOIA requester, only those records that would be disclosed to the public would be provided to the Plaintiff.

***Further review of the records and additional bases for non-disclosure***

28. In reviewing these records, those responsive to the eight questions/requests within the Plaintiff's FOIA, that are within the purview of EOUSA, while they have been previously disclosed in discovery, the records were unavailable for public disclosure pursuant to FOIA Exemption (b)(7)(A), but also Privacy Act Exceptions (j)(2) and the following FOIA Exemptions: (b)(5) – attorney-client, work product, and deliberative process privileges, (b)(6)/(b)(7)(C) – personal privacy information relating to third parties, and (b)(7)(E).

29. EOUSA processes all requests made by individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law. Criminal case files maintained by the USAOs are part of the DOJ Privacy Act System of Records. The Attorney General has promulgated regulations at 28 C.F.R. § 16.81(a)(1) which exempts U.S. Attorney's Office criminal case files (known as Justice/USA-007 files) from the Privacy Act's access provisions as authorized by 5 U.S.C. §a(i)(2). Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. Plaintiff's entire request pertained to his criminal case.

30. Privacy Act Exception (j)(2) exempts from disclosure material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals. *See* 5 U.S.C. § 552(j)(2). This material was created to investigate and potentially prosecute individuals for the commission of federal crimes. As such, Plaintiff is not entitled to disclosure under the Privacy Act.

31. Accordingly, as a baseline analysis for the records beyond FOIA Exemption (b)(7)(A), EOUSA determined that the responsive records were not disclosable under the Privacy Act as they were records gathered for law enforcement, are part of an ongoing investigation and litigation matter, and reside in systems exempt from access. As such, I determined that the records could be appropriately assessed and processed under the provisions of FOIA.

32. FOIA Exemption (b)(5) provides that FOIA does not apply to matters that are inter-agency or intra-agency memoranda or letters which would not be available by law to a private party in litigation with DOJ.[4] I reviewed the documents responsive to Plaintiff's FOIA request and identified numerous instances of intra-agency and inter-agency memoranda containing information that are protected from disclosure by one or more of the following three privileges: a) the work-

[4] 5 U.S.C. § 552 (b)(5) (2000).

product doctrine; b) the attorney-client privilege; and c) the deliberative process privilege.

33. FOIA Exemptions (b)(6) and (b)(7)(C) similarly permit the withholding of private personal information from the potentially responsive records as the disclosure of that information would constitute a clearly unwarranted invasion of the personal privacy of individuals, *i.e.,* telephone numbers, email addresses, addresses, and personal information of third parties, including DOJ personnel and individuals identified by the witness.

34. FOIA Exemption (b)(7)(E) protects "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E). This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures. These records contain information on how DOJ deploys their investigatory resources against a particular individual and provides insight into law enforcement techniques and/or procedures.

**SEGREGABILITY**

35. Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and that is reasonably segregable from the exempt material. If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.

36. An agency may satisfy its segregability obligations by (1) providing an explanation that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.

37. I directed the review of all records and then conducted a separate review of the potentially responsive records and determined that the statements are inextricably intertwined with existing and pending investigations and current prosecutions. Further, I interviewed AUSAs at USAO-NYS to ensure the continued applicability of FOIA Exemption (b)(7)(A). There are ongoing law enforcement matters precluding the release of this information to the public via FOIA.

38. In addition, through further assessment and review, I determined that the requester's interest in the records could not overcome any applicable exceptions for release under the Privacy Act. Finally, I considered whether the public's interest in disclosure could overcome any of the bases for withholding under FOIA. There is no segregable information that could be released without compromising active matters.

39. Finally, due to

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 24th day of September 2026.

9/24/2026

X 

Nicole Y. Moore-Sanchez
EOUSA Attorney Advisor
Signed by: NICOLE MOORE