UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:26-CV-23517-RAR

FILED BY ______ D.C.
OCT 23 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MARK S. SCOTT,
Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,
Defendant.
_______________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mark S. Scott ("Plaintiff"), proceeding pro se, respectfully submits this Reply in support of his Motion for Summary Judgment, ECF No. 13, and in opposition to Defendant United States Department of Justice's ("DOJ" or "Defendant") Cross-Motion for Summary Judgment, ECF No. 24.

## INTRODUCTION

Defendant's September 24, 2026 submission does not resolve the central issues raised by Plaintiff's Freedom of Information Act ("FOIA") request. It sharpens them.

Defendant states that the United States Attorney's Office for the Southern District of New York ("SDNY") identified approximately 7.7 gigabytes of potentially responsive records, including "interviews, statements, and related records pertaining to K. Ignatov." More importantly, Defendant justifies withholding these materials in part because disclosure could reveal "which statements cannot be relied upon, and which the government rejected." Declaration of Nicole Moore-Sanchez ("Moore-Sanchez Decl."), ECF No. 24-1.

The credibility of Ignatov was a central issue throughout Plaintiff's trial and subsequent post-trial litigation. Ignatov was the Government's sole cooperating witness. Gilbert Armenta, another individual who had cooperated in the OneCoin investigation, was disqualified as a

cooperating witness at Plaintiff's trial following misconduct and dishonesty while under Government supervision. That experience should have heightened the prosecution team's sensitivity to the reliability of the sole cooperator upon whom it would rely at trial. In its June 27, 2019 bail submission, the Government wrote that Ignatov "simply cannot be trusted to comply with any conditions set by the Court," citing lies to border agents, investigators, and Pretrial Services. United States v. Scott, No. 17-CR-630 (ER), ECF No. 90 at 1 (S.D.N.Y. June 27, 2019). That statement addressed bail compliance, not the truth of every substantive statement, but confirms prosecutors' pretrial awareness of his repeated dishonesty.

That representation goes directly to one of the principal subjects of Plaintiff's FOIA request: what the Government knew and recorded concerning the truthfulness, credibility, consistency, and reliability of its sole cooperating witness, Konstantin Ignatov. Which Ignatov statements did the Government determine could not be relied upon? Which did it reject? When and why were those determinations made? And what records reflect the Government's assessment of whether Ignatov could be trusted?

Ignatov did not voluntarily disclose or correct his laptop perjury. Whistleblower Duncan Arthur reported the falsehood to an investigator on June 29, 2021 and, perceiving that his report had not prompted meaningful action and having learned from public information that Ignatov had lied at Plaintiff's trial, contacted defense counsel on July 9, 2021. Arthur reported that the laptop contained OneCoin-related information, including financial material, and had been entrusted to him rather than thrown away. See United States v. Scott, ECF Nos. 433, 434-4, 434-15. Whether information on the laptop was ultimately destroyed, preserved, or transferred remains a matter for responsive records, not assumption.

Those questions are particularly significant because Ignatov later admitted that he lied under oath concerning his laptop. They became more significant still when objective information from

Indian authorities materially contradicted his testimony concerning an alleged July 20, 2016 meeting in Sofia, Bulgaria involving Plaintiff, Irina Dilkinska, and Ruja Ignatova (the "July 20 Meeting").

Plaintiff's former trial and appellate counsel, Arlo Devlin-Brown, confirms that the Government questioned Ignatov on September 1, 2021 concerning the accuracy of his trial testimony and that Ignatov continued to maintain in substance that he recalled the meeting as he had described it at trial. Declaration of Arlo Devlin-Brown ("Devlin-Brown Decl."), Ex. A ¶ 2. Approximately three months later, on or about December 3, 2021, the Government produced records reflecting that Dilkinska was in India from July 19 through July 22, 2016. Id. ¶ 3. Mr. Devlin-Brown is unaware of the defense thereafter receiving any notes, reports, or other records of Government questioning of Ignatov about the July 2016 meeting. Id. ¶ 4.

The Second Circuit subsequently held that the exclusion of Defense Exhibit 550 was erroneous but harmless, while upholding the exclusion of Defense Exhibit 552. United States v. Scott, Nos. 23-7199, 24-368 (2d Cir. Jan. 31, 2025). The appellate holding does not reopen the conviction, but supports the significance of the contemporaneous emails and the need to account for records showing how prosecutors evaluated them.

That chronology presents a focused FOIA issue. The Government questioned Ignatov about the accuracy of his testimony; he stood by his account; and the Government subsequently obtained objective information materially contradicting that account. Yet Defendant has identified no record showing that prosecutors or agents returned to Ignatov, confronted him with the new information, or asked whether the testimony he had just reaffirmed was false. Nor has Defendant identified a record showing that Ignatov himself supplied the later explanation that he had merely mistaken the date.

At the same time, Defendant now tells this Court that its files contain or implicate Ignatov statements the Government determined "cannot be relied upon" or "rejected." Plaintiff does not ask this Court to decide whether Ignatov committed additional perjury or whether prosecutors committed misconduct. The FOIA issue is narrower: whether DOJ reasonably searched for, adequately accounted for, and lawfully withheld records concerning the Government's assessment of Ignatov's veracity, the approximately twenty preparation sessions to which he testified, the statements the Government rejected or considered unreliable, and the Government's response after objective evidence contradicted testimony Ignatov had expressly reaffirmed.

Defendant bears the burden of demonstrating that its search was adequate and that its withholdings are proper. 5 U.S.C. § 552(a)(4)(B); Jimenez v. Department of Homeland Security, 119 F.4th 892, 899–900 (11th Cir. 2024). To establish search adequacy, the agency must show "beyond a material doubt" that it conducted a search reasonably calculated to uncover all relevant documents. Broward Bulldog, Inc. v. U.S. Dep't of Justice, 939 F.3d 1164, 1176 (11th Cir. 2019); Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1248 (11th Cir. 2008). The Court must also have an adequate factual basis to determine whether asserted exemptions apply. Jimenez, 119 F.4th at 899–900. The present declaration does not provide that basis as to these specifically identified categories.

**STATEMENT OF RELEVANT FACTS**

The Government's pretrial bail submission expressly questioned Ignatov's trustworthiness. United States v. Scott, ECF No. 90 at 1. During trial, the defense made Brady requests relating to Ignatov's testimony and the alleged July 20 Meeting. The Government's present assertion concerning statements that "cannot be relied upon" or were "rejected" raises a reasonable question whether additional impeachment assessments existed and how they were handled. The

request seeks records, not a determination in this FOIA case that such materials were withheld unlawfully.

Ignatov was the Government's sole cooperating witness at Plaintiff's November 2019 criminal trial. He testified that before trial he met with prosecutors approximately twenty times; that during those sessions he repeatedly was shown new evidence and portions of discovery he had not previously seen; and that prosecutors asked him "lots of questions" about the July 20 Meeting. See Complaint, Ex. F.

The Government produced at least some Ignatov witness-statement materials to Plaintiff's criminal counsel, including notes of interviews and meetings in 2019. Devlin-Brown Decl. ¶ 2. Some materials were subject to restrictions that prevented Plaintiff personally from reviewing them. Declaration of Mark S. Scott ("Scott Decl."), Ex. B ¶¶ 3–4.

The August 27, 2021 FBI FD-302 records that Ignatov "did not think the US Government would believe what happened to the laptop, which is why he lied," that he "did not correct the lie because he did not want the USG to think he was a liar," and that he was "intimidated when AUSA Christopher DiMase did not believe parts of [his] story at the beginning." Complaint, Ex. G. The Government's own bail submission had previously stated that Ignatov "simply cannot be trusted to comply with any conditions set by the Court." ECF No. 90 at 1. These records warrant a focused search for credibility assessments.

After trial, Ignatov admitted that he had lied under oath concerning the destruction of his laptop. A subsequently produced FBI FD-302 records Ignatov's statement that he lied because he did not believe the United States Government would believe what happened to the laptop and that he did not correct the lie because he did not want the Government to think he was a liar. See Complaint, Ex. G.

On September 1, 2021, the Government questioned Ignatov concerning the accuracy of his trial testimony, and he continued to maintain in substance that he recalled the meeting as he had described it at trial. Devlin-Brown Decl. ¶ 2. On or about December 3, 2021, the Government produced records reflecting that Dilkinska was in India from July 19 through July 22, 2016. Id. ¶ 3. Mr. Devlin-Brown is unaware of the defense thereafter receiving records of further Government questioning of Ignatov about the July 2016 meeting. Id. ¶ 4.

In this action, Defendant represents that SDNY identified approximately 7.7 gigabytes of potentially responsive records. Moore-Sanchez Decl. ¶¶ 13–14. Defendant describes responsive materials as including Ignatov "interviews, statements, and related records," and states that disclosure could reveal "which statements cannot be relied upon, and which the government rejected."

## I. DEFENDANT HAS NOT ADEQUATELY ACCOUNTED FOR THE APPROXIMATELY TWENTY PREPARATION SESSIONS

Ignatov's approximately twenty preparation sessions are not hypothetical. He testified:

"Q: But it was maybe 20 or more times you met with them?

A: Around 20 times."

He further testified that in most sessions he was shown new evidence or discovery he had not previously seen and that "every time it was something different." Concerning the July 20 Meeting, he testified:

"Q: The prosecutors asked you in the preparation sessions lots of questions about that meeting, right?

A: Yes."

See Complaint, Ex. F.

Plaintiff does not contend that no Ignatov interview or preparation materials were produced. Mr. Devlin-Brown confirms that the Government produced at least some Ignatov witness-

statement materials, including notes of 2019 interviews and meetings. Devlin-Brown Decl. ¶ 2. That fact makes Defendant's failure to account for the preparation-session records more significant because it establishes that Government personnel memorialized at least some substantive interactions with Ignatov.

Defendant does not identify which of the approximately twenty sessions generated records, which such records are contained within the 7.7 gigabytes, which were previously produced, which were restricted, or which remain withheld. Nor does Defendant identify the records reflecting the extensive questioning concerning the July 20 Meeting that Ignatov testified occurred.

If all responsive records from those sessions were previously produced, Defendant can identify them with reasonable specificity. If only some were produced, Defendant can identify the remaining category and applicable exemptions. If some sessions generated no records, Defendant can say so. If records exist but remain withheld, Defendant must justify that withholding under FOIA. A generalized reference to 7.7 gigabytes of prior discovery does not answer these specific questions.

## II. THE GOVERNMENT'S OWN DECLARATION MAKES ITS ASSESSMENT OF IGNATOV'S VERACITY A CENTRAL FOIA ISSUE

The quoted statement concerning which statements "cannot be relied upon" and which the Government "rejected" may be a hypothetical description of harm from disclosure rather than an admission that particular Ignatov statements were actually rejected. Either way, Defendant must explain the applicability of the justification to the records withheld and adequately search for actual credibility assessments responsive to Plaintiff's request. It cannot use a generalized exemption rationale to avoid a meaningful account of the responsive records.

That is at the center of Plaintiff's request. Plaintiff specifically sought records concerning the Government's knowledge and assessment of Ignatov's credibility, truthfulness, consistency, and reliability. Defendant's own description confirms that reliability judgments were made.

The questions are concrete: Which statements could not be relied upon? Which were rejected? Why and when? Were they made during the approximately twenty preparation sessions, during later interviews, or both? Were they contradicted by documents or other evidence? Did prosecutors or agents regard Ignatov as mistaken, inconsistent, unsupported, or deliberately untruthful? Were those assessments memorialized?

Those questions carry particular force because the Government eventually knew that Ignatov had deliberately lied under oath concerning his laptop. It was therefore evaluating a cooperating witness whose credibility had already been seriously called into question and whose account of another material event was later contradicted by objective information.

Plaintiff does not ask the Court to decide that Ignatov was generally untruthful or that the Government knowingly presented false testimony. But Defendant's declaration itself raises the central FOIA question: what did the Government believe about Ignatov's reliability, and what records document those judgments? If the Government determined that only one statement was deliberately false, it can clarify that. If it rejected additional statements because they were inaccurate, inconsistent, unsupported, or contradicted, records reflecting those determinations are responsive. If prosecutors or agents developed broader concerns about whether Ignatov could be trusted, records reflecting those concerns are responsive.

The Government cannot invoke statements it "cannot" rely upon or "rejected" as part of its withholding justification while leaving the Court without a sufficient factual basis to determine what responsive categories are being withheld and why.

## III. DEFENDANT HAS NOT ADEQUATELY ACCOUNTED FOR WHAT OCCURRED AFTER THE INDIA EVIDENCE CONTRADICTED IGNATOV'S REAFFIRMED ACCOUNT

The Government's later explanation that Ignatov "may" have been mistaken about the meeting date is not the same as a documented explanation from Ignatov after confrontation with the India records. The defense also identified contemporaneous emails inconsistent with his account; the Second Circuit held the exclusion of Defense Exhibit 550 erroneous, though harmless. United States v. Scott, Nos. 23-7199, 24-368 (2d Cir. Jan. 31, 2025). No follow-up record has been identified establishing that Ignatov was confronted with the India evidence, supplied an alternative date, or explained the contradictions. The FOIA remedy is a reasonable search and adequate accounting, not a criminal-case finding.

The July 20 Meeting provides a concrete test of search adequacy. Before trial, prosecutors questioned Ignatov extensively about the meeting. After trial, Ignatov admitted lying under oath concerning his laptop. On September 1, 2021, the Government specifically questioned him concerning the accuracy of his trial testimony, and he reaffirmed in substance his account of the meeting. Devlin-Brown Decl. ¶ 2. Approximately three months later, the Government produced records reflecting that Dilkinska was in India from July 19 through July 22, 2016. Id. ¶ 3.

Thus, when questioned in September 2021, Ignatov did not withdraw his account or say he had confused the date. He reaffirmed it. Only afterward did the objective India evidence emerge. Mr. Devlin-Brown is unaware of the defense thereafter receiving any record of further Government questioning of Ignatov about the July 2016 meeting. Id. ¶ 4.

This does not prove that no further questioning occurred. It establishes a concrete reason to require Defendant to explain what its search found. Given the sequence of events, further inquiry was an obvious lead: the Government's principal cooperator had admitted lying under oath on

one subject; he then reaffirmed the challenged account when specifically questioned; and objective evidence subsequently contradicted that account.

Yet Defendant identifies no subsequent interview in which prosecutors or agents confronted Ignatov with the India evidence. Nor does it identify a record showing that Ignatov himself supplied the later "mistaken date" explanation. If he was questioned after December 2021, those records are responsive. If he identified another date or supplied that explanation, those records are responsive. If prosecutors independently concluded that he was mistaken rather than false, records reflecting the factual basis for that assessment are responsive. If no further questioning occurred, Defendant can establish that after a reasonable search.

The Court need not decide what prosecutors should have asked. The FOIA issue is whether Defendant reasonably searched for and accounted for records showing what the Government actually did and concluded after the India evidence contradicted an account Ignatov had recently reaffirmed.

## IV. DEFENDANT HAS NOT SHOWN BEYOND A MATERIAL DOUBT THAT ITS SEARCH FOLLOWED THESE OBVIOUS LEADS

An agency need not establish that its search was perfect or exhaustive. It must establish beyond a material doubt that its methods were reasonably calculated to uncover responsive records. Broward Bulldog, 939 F.3d at 1176; Miccosukee Tribe, 516 F.3d at 1248.

Defendant's declaration states that EOUSA sent the request to SDNY, that the SDNY FOIA liaison searched the office case-management system and SharePoint, and that search guidance was supplied to AUSAs associated with the matter. Moore-Sanchez Decl. ¶¶ 12–14. That description does not adequately address the specific leads Plaintiff identified.

It does not explain whether prosecutors who participated in the approximately twenty sessions were asked to identify their notes or other records; whether searches were reasonably directed to prosecutor emails, witness files, handwritten notes, calendars, preparation materials,

or communications concerning Ignatov's reliability; what searches were directed to the July 20 Meeting, the September 1, 2021 interview, the December 2021 India evidence, or subsequent consideration of the contradiction; or how Defendant searched for the very category its submission identifies—Ignatov statements the Government could not rely upon or rejected.

Nor does it adequately account for FBI records even though Ignatov testified that FBI agents participated in his preparation sessions. Plaintiff supplied more than speculation: a named witness, approximately twenty meetings, identified Government participants, a specific subject repeatedly discussed, a documented post-trial interview, an admitted instance of perjury, a later objective contradiction, and Government reliability judgments Defendant itself acknowledges. Those are concrete leads. The declaration does not sufficiently explain how the search pursued them.

## V. DEFENDANT'S ASSERTION THAT THE 7.7 GIGABYTES WERE PREVIOUSLY PRODUCED REQUIRES CLARIFICATION

Moore-Sanchez states that SDNY delivered four large file sets totaling approximately 7.7 gigabytes and that responsible AUSAs confirmed that these files represented all potentially responsive SDNY records and "were provided in discovery to the Plaintiff." Moore-Sanchez Decl. ¶¶ 13–14.

Plaintiff now recognizes that at least some Ignatov witness materials were produced to his criminal counsel and that some materials were restricted from his personal review. Scott Decl. ¶¶ 3–4. More importantly, the Devlin-Brown Declaration identifies a concrete gap that the generalized reference to prior discovery does not answer: the Government memorialized the September 1, 2021 interview in which Ignatov reaffirmed his account, then produced the India evidence in December, yet trial counsel is unaware of receiving records of subsequent questioning about the July meeting.

If such records exist within the 7.7 gigabytes and were previously produced, Defendant can identify them. If they exist but were not produced, Defendant can identify the applicable FOIA exemption. If they were restricted, Defendant can identify that circumstance. If no such records exist because no further interview occurred, Defendant can say so. The same is true of records from the approximately twenty preparation sessions and records reflecting Government reliability determinations.

Nor does a prior "Attorneys' Eyes Only" restriction itself establish a present FOIA exemption. Plaintiff does not contend that restricted disclosure to criminal counsel waived otherwise valid FOIA exemptions or automatically entitles him to the records. But Defendant must justify present withholding under FOIA, including the applicable exemption, foreseeable harm where required, and segregability.

## VI. THE FBI RECORDS REMAIN UNACCOUNTED FOR

Ignatov testified that FBI agents participated in the approximately twenty preparation sessions. Yet Moore-Sanchez states that EOUSA does not conduct searches for records outside EOUSA and the United States Attorneys' Offices, and the search described concerns SDNY systems and AUSAs. Moore-Sanchez Decl. ¶¶ 6, 12–14.

Plaintiff does not contend that EOUSA itself must search every FBI database. The narrower problem is that the request identified FBI-generated or FBI-maintained records and the known facts identify FBI agents as participants. The existence of some FBI material in prior criminal discovery does not establish that repositories reasonably likely to contain all responsive FBI records were searched for this request.

Defendant should therefore identify whether the request or pertinent portions were referred to the FBI, whether an appropriate FBI search occurred, and, if so, what repositories were searched. If no such search or referral occurred, supplemental processing is appropriate.

## VII. DEFENDANT'S INVESTIGATIVE-TECHNIQUE AND ONGOING-ENFORCEMENT JUSTIFICATIONS REQUIRE A PARTICULARIZED CONNECTION TO THESE HISTORICAL RECORDS

Plaintiff recognizes that Exemption 7(A) permits appropriate categorical withholding where disclosure could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. § 552(b)(7)(A); NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978). Plaintiff also recognizes that Exemption 7(E) protects qualifying law-enforcement techniques and procedures.

But the records emphasized here arise principally from a criminal case tried in November 2019. Plaintiff's trial has been over for nearly seven years, and his prosecution, trial, and direct appellate proceedings are over. The July 20 events date to 2016, and the post-trial credibility events at issue occurred in 2021. The existence of continuing investigations or proceedings involving other persons does not automatically transform every historical record concerning Plaintiff's completed prosecution into information whose disclosure would interfere with current enforcement.

Nor is the fact that prosecutors interviewed and prepared a cooperating witness a secret investigative technique. Ignatov publicly testified that he met with prosecutors approximately twenty times, that they showed him evidence, and that they questioned him extensively about the July 20 Meeting.

Plaintiff does not seek current investigative targets, confidential operational details, or undisclosed investigative methods. The central records concern what Ignatov said, what the Government determined could or could not be believed, how it evaluated contradictions in his account, and what it did after objective evidence conflicted with testimony he had reaffirmed.

Defendant must connect its asserted exemptions to those particular categories. A historical witness interview from a completed prosecution is not self-evidently protected merely because unrelated or broader enforcement activity continues. If portions reveal genuinely protected

current investigative information or techniques, those portions may be withheld or redacted; that does not establish that every responsive factual statement, historical interview record, or reliability assessment is exempt in full.

**VIII. THE REQUEST SEEKS INFORMATION ABOUT GOVERNMENT CONDUCT, NOT MERELY PRIVATE INFORMATION ABOUT IGNATOV**

FOIA serves the public's interest in knowing "what their government is up to." U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). Its basic purpose is opening agency action to public scrutiny. Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976). Prosecutors are held to a high standard: their interest is "not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). Possible willful avoidance of credibility contradictions or failures to disclose impeachment or exculpatory evidence are legitimate subjects of public scrutiny, although FOIA does not authorize this Court to decide such violations. Plaintiff was prosecuted under a theory involving willful blindness; he does not claim that doctrine governs FOIA, but the comparison reinforces the importance of transparency concerning what prosecutors knew and investigated.

Defendant also invokes privacy interests under Exemptions 6 and 7(C). Plaintiff recognizes legitimate privacy interests and does not seek unnecessary personal information about Ignatov.

The core request concerns Government conduct: what prosecutors and agents learned from their cooperating witness; which statements they considered reliable or unreliable; how they responded after he admitted lying under oath; and what they did after objective evidence contradicted another material account. That is information capable of shedding light on "what their government is up to," the central purpose identified in United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). Appropriate personal information can be redacted; privacy interests do not eliminate the public interest in

records documenting the Government's own credibility assessments and handling of a cooperating witness.

## IX. THE PRESENT SUBMISSION DOES NOT PROVIDE AN ADEQUATE FACTUAL BASIS TO RESOLVE THE WITHHOLDINGS

A Vaughn index is not mandatory in every FOIA case. An agency may establish its entitlement to summary judgment through sufficiently detailed declarations. But the Court must have an adequate factual basis to determine whether the search was reasonable and whether the claimed exemptions apply. Jimenez, 119 F.4th at 899–900; Broward Bulldog, 939 F.3d at 1175–76; Miccosukee Tribe, 516 F.3d at 1258–59.

The present declaration leaves unresolved the records from the approximately twenty preparation sessions; the records of substantive July 20 questioning; the Ignatov statements the Government determined could not be relied upon or rejected; broader Government assessments of his truthfulness and reliability; any reassessment after his admitted laptop perjury; whether he was questioned after the December 2021 India evidence; whether he personally supplied the "mistaken date" explanation; the basis for any Government conclusion that he was mistaken rather than false; whether appropriate FBI repositories were searched or the request appropriately referred; and what exemptions and segregability determinations apply to the disputed categories.

These are concrete questions grounded in established events and Defendant's own description of its records. The approximately twenty sessions occurred. The July 20 questioning occurred. The Government created at least some Ignatov interview records. Ignatov admitted lying under oath. The September 1, 2021 interview occurred. He reaffirmed his account. The India evidence subsequently emerged. And Defendant itself states that responsive material implicates statements the Government could not rely upon or rejected. That record warrants a more particularized accounting before summary judgment can properly be entered for Defendant.

## X. A FOCUSED SUPPLEMENTAL DECLARATION, CATEGORICAL JUSTIFICATION, AND, IF NECESSARY, IN-CAMERA REVIEW ARE THE APPROPRIATE FOIA REMEDIES

Plaintiff does not seek a page-by-page index of 7.7 gigabytes or in-camera review of that entire universe. He seeks the information necessary for the Court to determine whether DOJ satisfied its FOIA obligations.

At minimum, Defendant should be required to submit a supplemental declaration describing the searches reasonably directed to the disputed categories and stating whether responsive records were located concerning: (1) the approximately twenty Ignatov preparation sessions; (2) substantive questioning about the July 20 Meeting; (3) Government assessments of Ignatov's truthfulness, consistency, credibility, or reliability; (4) Ignatov statements the Government determined could not be relied upon or rejected; (5) reassessment following his admitted laptop perjury; (6) the September 1, 2021 interview; and (7) questioning, investigation, or assessment after the December 2021 India evidence.

For responsive records located in those categories, Defendant should state whether they were previously produced, produced subject to restricted access, or withheld, and provide a sufficiently detailed declaration, Vaughn index, or equivalent categorical justification identifying the exemption asserted and permitting the Court to evaluate the withholding. If Defendant contends that all responsive records were previously produced, it should identify with reasonable specificity where the disputed categories appear in that production.

If a meaningful public description would itself reveal exempt information, the Court may use targeted in-camera review under 5 U.S.C. § 552(a)(4)(B), limited to the pertinent records or representative samples. That remedy is particularly appropriate for records concerning Government determinations that Ignatov statements could not be relied upon or were rejected

and records reflecting the Government's treatment of the July Meeting discrepancy after the India evidence.

**XI. SEGREGABILITY AND FORESEEABLE HARM MUST BE ADDRESSED AS TO THE RECORDS ACTUALLY AT ISSUE**

FOIA requires production of any reasonably segregable nonexempt portion of a record. 5 U.S.C. § 552(b). The FOIA Improvement Act also requires the agency, within the statutory framework, to address foreseeable harm and reasonable partial disclosure. 5 U.S.C. § 552(a)(8)(A).

The disputed records potentially contain distinct forms of information: dates and participants, Ignatov's factual statements, evidence presented to him, his responses, attorney mental impressions, investigative information, and Government credibility assessments. Those categories may implicate different exemptions.

Plaintiff does not contend that privileged attorney mental impressions or genuinely sensitive current investigative information must be disclosed, or that every factual statement necessarily can be segregated. He asks that Defendant perform the FOIA analysis on the records actually at issue and explain why nonexempt portions cannot reasonably be segregated. The fact that a document arose in a criminal investigation, was once designated "Attorneys' Eyes Only," or contains some protected information does not by itself establish that every portion may be withheld today.

**DISCLOSURE AND FALSE-TESTIMONY PRINCIPLES RELEVANT TO THE REQUEST**

Plaintiff's midtrial Brady requests and the Government's present withholding rationale raise a concrete question whether additional assessments of Ignatov's credibility existed before trial or emerged thereafter. Brady, Giglio, Kyles, the Jencks Act, Napue, and Glossip define important obligations in criminal cases, but do not themselves authorize relief in this FOIA action. The

appropriate remedy here remains a reasonably calculated search, an adequate explanation of responsive records and exemptions, and disclosure of nonexempt segregable material.

## XII. THE COURT CAN RESOLVE THIS FOIA CASE WITHOUT DECIDING THE UNDERLYING CRIMINAL CONTROVERSY

Brady v. Maryland, 373 U.S. 83, 87 (1963), Giglio v. United States, 405 U.S. 150, 154–55 (1972), and Kyles v. Whitley, 514 U.S. 419, 437–38 (1995), explain the importance of favorable and impeachment evidence, including information known to investigative agents. The Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2 separately govern qualifying prior witness statements; not every interview note is necessarily producible. Goldberg v. United States, 425 U.S. 94, 98–104 (1976). Napue v. Illinois, 360 U.S. 264, 269–71 (1959), and Glossip v. Oklahoma, 604 U.S. 226 (2025), address the prosecution's duty concerning materially false testimony. These authorities explain why the requested records matter, without transforming the FOIA action into a collateral criminal proceeding.

The criminal history explains why these records matter and why Plaintiff identified them with unusual specificity. But the relief sought is confined to FOIA. Plaintiff does not ask the Court to decide whether Ignatov lied about the July 20 Meeting, whether prosecutors knowingly presented false testimony, or whether any criminal-discovery violation occurred.

The question is whether DOJ conducted a reasonable search and lawfully withheld responsive agency records. Defendant's own declaration has made the Government's evaluation of Ignatov's veracity unavoidable: the Government says there are Ignatov statements that "cannot be relied upon" and statements it "rejected." Ignatov had admitted lying under oath. He reaffirmed the July Meeting account when specifically questioned in September 2021. Objective evidence then materially contradicted that account. Yet no post-India interview or explanation has been identified.

The Court need not decide what the Government should have believed. It need only require an adequate factual basis to determine whether DOJ reasonably searched for and lawfully withheld records showing what the Government actually believed, what it rejected, what it investigated, and why. On the present record, Defendant has not supplied that basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Cross-Motion for Summary Judgment on the present record and grant Plaintiff's Motion for Summary Judgment to the extent necessary to enforce DOJ's obligations under FOIA. Specifically, Plaintiff requests an Order:

1. requiring Defendant to conduct any supplemental search reasonably necessary to address the identified leads, including appropriate processing or referral of FBI-maintained records, and to submit a supplemental declaration describing the searches conducted and whether responsive records were located in the disputed categories;

2. requiring Defendant, for responsive records located in those categories, to state whether they were previously produced, produced subject to restricted access, or withheld, and, if Defendant relies on prior production, to identify with reasonable specificity where the disputed categories appear;

3. requiring Defendant to provide a sufficiently detailed declaration, Vaughn index, or equivalent categorical justification for records presently withheld, identifying the applicable exemption and providing an adequate factual basis for judicial review, including foreseeable harm where required and segregability;

4. if public description would itself reveal exempt information, conducting or requiring targeted in-camera review under 5 U.S.C. § 552(a)(4)(B) of the pertinent records or representative samples, particularly records concerning Government determinations that Ignatov

statements could not be relied upon or were rejected and records concerning the post-December 2021 treatment of the July Meeting discrepancy;

5. requiring release of all reasonably segregable nonexempt portions of responsive records; and

6. granting such other and further FOIA relief as the Court deems appropriate.

Respectfully submitted,

MARK S. SCOTT

Plaintiff, Pro Se

600 Coral Way, 12th Floor

Coral Gables, Florida 33134

msslitdeline@gmail.com

Dated: October 22, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2026, a true and correct copy of the foregoing was sent to counsel of record for Defendant by United States Postal Service (USPS), postage prepaid, in accordance with the Federal Rules of Civil Procedure and the procedures of this Court.

______________________________
MARK S. SCOTT
Plaintiff, Pro Se

# EXHIBIT A - ARLO DEVLIN-BROWN DECLARATION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:26-cv-23517-RAR

MARK S. SCOTT,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant.
______________________________________/

**DECLARATION OF ARLO DEVLIN-BROWN**

I, Arlo Devlin-Brown, declare as follows:

1. I represented Mark S. Scott in *United States v. Scott*, No. 17 Cr. 630 (ER) (S.D.N.Y.), including at trial in 2019, in post-trial proceedings, and on appeal. I make this declaration based on my recollection of the case and my review of the witness-statement material the government produced for Konstantin Ignatov.

2. Before and after trial, the government produced witness-statement material for Mr. Ignatov. This included notes of interviews and meetings with him in 2019. After trial, in 2021, it produced notes of further interviews of Mr. Ignatov. Those included notes of a September 1, 2021 session about the accuracy of his trial testimony, in which he stated in substance that he recalled the meeting with Mr. Scott and Irina Dilkinska as he had described it at trial.

3. On or about December 3, 2021, the government produced records reflecting that Ms. Dilkinska was in India from July 19 to 22, 2016.

4. I am not aware of the defense receiving any notes, reports, or other records of any government interview or questioning of Mr. Ignatov about the July 2016 meeting after the production described in paragraph 3.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on October 5, 2026.

Arlo Devlin-Brown

# EXHIBIT B - MARK S. SCOTT DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:26-CV-23517-RAR

MARK S. SCOTT, Plaintiff,
v.
UNITED STATES DEPARTMENT OF JUSTICE, Defendant.
______________________________________/

**DECLARATION OF MARK S. SCOTT**

I, Mark S. Scott, declare as follows:

1. I am the Plaintiff in this action and was the defendant in the criminal prosecution underlying my FOIA request. I make this declaration based upon my personal knowledge and review of materials available to me.

2. Konstantin Ignatov was the Government's sole cooperating witness at my trial. He testified that he participated in approximately twenty preparation sessions, was repeatedly shown new evidence and discovery, and was asked "lots of questions" about the alleged July 20, 2016 meeting involving me, Irina Dilkinska, and Ruja Ignatova.

3. I understand from my former criminal counsel that the Government produced at least some notes and witness-statement materials concerning interactions with Ignatov. Certain materials were designated "Attorneys' Eyes Only" or otherwise restricted from my personal review. I did not personally review those restricted materials before or during trial.

4. Based upon the materials presently available to me, I have not identified substantive records showing the extensive questioning about the July 20 Meeting that Ignatov testified occurred during the approximately twenty preparation sessions. Nor have I identified records showing which statements the Government determined could not be relied upon or rejected.

5. During trial, my defense raised Brady concerns and requested information relevant to Ignatov's testimony, including the alleged July 20 Meeting. I have not been able to determine whether the Government's present FOIA records contain additional credibility assessments or impeachment information relevant to those requests.

6. After trial, Ignatov admitted that he had testified falsely concerning the destruction of his laptop. The FBI FD-302 attached to my Complaint records his explanation for lying and his concern that the Government would consider him a liar.

7. I understand that on September 1, 2021, the Government questioned Ignatov concerning the accuracy of his trial testimony and that he continued to maintain in substance that he recalled the meeting with me and Dilkinska as he had described it at trial.

8. On or about December 3, 2021, the Government produced official information reflecting that Dilkinska was in India from July 19 through July 22, 2016.

9. Based upon the materials presently available to me, I have not located records showing that, after the India information was produced, Ignatov was again questioned about the July 2016 meeting, confronted with the India evidence, asked whether his testimony was false, or asked to explain the contradiction.

10. I likewise have not located records showing that Ignatov himself subsequently identified a different date for the alleged meeting or supplied the explanation that he merely had been mistaken concerning the date.

11. I do not state that such records do not exist. Determining whether they exist, where they are maintained, whether they were previously produced or restricted, and whether they are presently withheld is among the purposes of my FOIA request.

12. I have been unable to determine from the materials available to me which portions of the approximately 7.7 gigabytes identified by Defendant correspond to the preparation sessions, Government assessments of Ignatov's credibility, statements the Government considered unreliable or rejected, or any investigation following the December 2021 India evidence.

13. I make this declaration solely to describe my personal knowledge, the materials I have been able to review, and the specific categories of responsive records I have been unable to identify.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on October 22, 2026.

______________________________

MARK S. SCOTT

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE

E

$38.25

Origin: 33134
10/22/26
1158670110-10

PRIORITY MAIL EXPRESS®

MARK SCOTT
FL 12
600 CORAL WAY
CORAL GABLES FL 33134-7517
(786) 271-1621

0 Lb 8.00 Oz

RDC 07

SCHEDULED DELIVERY DAY: 10/23/26 06:00 PM

C071

SHIP TO:
(000) 000-0000
CLERK OF COURT
RM 8N09
400 NORTH MIAMI AVE
MIAMI FL 33128-1805

USPS TRACKING® #

9570 1148 4748 6295 0236 12

PRIORITY MAIL EXPRESS

FLAT RATE ENVELOPE

ONE RATE ■

UNITED STATES POSTAL SERVICE | PRIORITY® MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
Mark Scott
600 Coral Way Apt 12
Coral Gables
Fl 33134

FILED BY ___ D.C.
OCT 23 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

TO:
Clerk of Court
US District Court
Wilkie D. Ferguson Court
400 N. Miami Av. Room
8N09 Miami FL 33128

Label 228, December 2023

FOR DOMESTIC AND INTERNATIONAL USE

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

UNITED STATES POSTAL SERVICE

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments.

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

EMS

FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

VISIT US AT USPS.COM®

ORDER FREE SUPPLIES ONLINE

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

GUARANTEED* ▪ TRACKED ▪ INSURED

For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 20 lbs.